J-S74015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.J.B., JR. A/K/A A.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.J.B., SR., A/K/A A.J.B., FATHER | |
| | No. 1587 EDA 2014 |

Appeal from the Order Entered April 24, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001480-2011

BEFORE: BENDER, P.J.E., DONOHUE, J. and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:         **FILED DECEMBER 22, 2014**

A.J.B., Sr., (Father) appeals from the order entered on April 24, 2014, that granted the petition filed by the Philadelphia Department of Human Services (DHS), seeking the involuntary termination of his parental rights to A.J.B., Jr., (Child) (born in March of 2009) pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). We affirm.

In his brief, Father sets forth the following questions for our review:

A. Whether the court erred in failing to find that for the six months immediately preceding the filing of the petition, appellant father was visiting with his child, obtained employment, was seeking housing for himself and his child, had consistent negative drug screens, was continuing to live in a recovery house and complied with their rules, completed the majority of his family service plan objectives, and did not intend to relinquish his claim to his child or refused and/or failed to perform parental duties.

B. Whether the court erred in failing to find that for the six months immediately preceding the filing of the petition, appellant father had consistent contact and visits with his child.

---

*Retired Senior Judge assigned to the Superior Court.

C. Whether the court erred in finding that there were repeated and continuing findings of incapacity, abuse, neglect and/or dependency of this minor child by appellant father, when appellant father visited with his child, obtained employment, was seeking housing for himself and his child, had consistent negative drug screens, was continuing to live in a recovery house and complied with their rules, and completed the majority of his family service plan objectives.

D. Whether the court erred in finding that the conditions which led to the removal or placement of the child continue to exist, as to father, when appellant father was visited with his child, obtained employment, was seeking housing for himself and his child, had consistent negative drug screens, was continuing to live in a recovery house and complied with their rules, completed the majority of his family service plan objectives.

E. Whether the court erred in finding that the conditions which led to the removal or placement of the children continue to exist and termination of parental rights would best serve the needs and welfare of the child, when appellant father can remedy the conditions within a reasonable period of time, and when he was visiting with his child, obtained employment, was seeking housing for himself and his child, had consistent negative drug screens, was continuing to live in a recovery house and complied with their rules, completed the majority of his family service plan objectives.

F. Whether the court erred in finding that DHS made[] reasonable efforts towards reunification, by either failing and/or refusing to help father obtain insurance benefits to pay for continuous drug treatment or therapy and testing or a viable option or to consider options other than terminating father's parental rights, when he had completed the majority of his family service plan objectives.

G. Whether the court erred in terminating father's parental rights, when the sole reason he was unable to obtain housing, provide medical care for the [child] and maintenance of the child, was his lack of income, which was changing with his advancement to full time employment and health benefits.

Father's brief at 3-4.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276. Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* at 276 (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the comprehensive opinion authored by the Honorable Joseph L. Fernandes of the Court of Common Pleas of Philadelphia County, filed on July 23, 2014. We conclude that Judge Fernandes' thorough, well-reasoned opinion properly disposes of the issues raised by Father. Accordingly, we adopt Judge Fernandes' opinion as our own and affirm the order appealed from on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2014

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

In Re: A.J.B., JR. aka A.B. A MINOR    : CP-51-DP-0001480-2011

                                  : CP-51-AP-0000638-2013

APPEAL OF: A.J.B., SR., Father        : 1587 EDA 2014

OPINION

**Fernandes, J.:**

Appellant, A.J.B., SR. ("Father"), appeals from the order entered on April 24, 2014, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate his parental rights to A.J.B., JR. aka A.B. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1), (2), (5), (8), and (b). Athena M. Dooley Esquire, counsel for Father, filed a timely notice of appeal with a Statement of Errors pursuant to Rule 1925.

**Factual and Procedural Background**

On June 8, 2011, the Department of Human Services (DHS) received and Emergency General Protective Service (EGPS) report alleging that Mother had given birth to Child S.H. at Thomas Jefferson University Hospital; that Mother tested positive for cocaine, benzodiazepines, opiates and methadone at the time of delivery; that Mother had not obtained any infant supplies for Child S.H. because she anticipated that she should enter an inpatient drug and alcohol treatment program with Child S.H., and that the treatment program would provide her with infant supplies; and that Mother had an extensive history of drug use beginning when she was fourteen years old. DHS subsequently learned that Child S.H. would remain hospitalized at Thomas Jefferson University Hospital for an unspecified period of time. On June 10, 2011, DHS met with Mother, who admitted that she used drugs and was in need of substance abuse treatment. On June 12, 2011, Mother was admitted to Family House for inpatient drug and alcohol treatment, but DHS learned that Mother would be unable to care for Child S.H. when she was discharged from Thomas Jefferson University Hospital because her prescribed medication caused drowsiness.

The report also alleged that A.B. ("Child"), Mother's eldest son, born on March 29, 2009, was residing with D.T., a maternal great-aunt, who in accordance with an earlier substantiated report had been awarded custody. On June 20, 2011, DHS learned that the maternal great-aunt, D.T. planned to move to Florida; that she was unable to take the Child with her; that she had agreed to continue to care for the Child until July 29, 2011. On July 14, 2011, DHS held a family planning meeting. The Child's maternal uncle agreed to care for the Child and his sibling, S.H. After a home evaluation and submission of criminal and ChildLine clearances, maternal uncle, J.H. was approved as a caregiver. On July 26, 2011, DHS learned that Child S.H. was ready to be discharged from Thomas Jefferson University Hospital. On July 26, 2011, DHS obtained an Order of Protective Custody ("OPC") for both children and they were placed with their maternal uncle, J.H.

At the shelter care hearing for the children held on July 28, 2011, the court lifted the OPC and ordered that the temporary commitment to DHS to stand. The court ordered that DHS refer maternal uncle, J.H., for kinship care services; that maternal uncle, J.H., and Father be referred to the Clinical Evaluation Unit ("CEU") for a forthwith drug screen, dual diagnosis assessment, and monitoring, and that Mother be granted liberal supervised visits.

On August 4, 2011, in an adjudicatory hearing the court discharged the temporary commitment to DHS, adjudicated children dependent, and committed them to DHS. Father was ordered to submit a paternity test. The court ordered that Mother and Father be referred to the Achieving Reunification Center ("ARC"); that Mother be referred to the CEU for a forthwith drug screen, dual diagnosis assessment, and monitoring; and that Father be referred to the CEU for a forthwith drug screen and monitoring.

On September 22, 2011, the initial Family Service Plan ("FSP") meeting was held. The FSP permanency goal for children was to return to the care of their parent(s). The FSP objectives for Mother and Father were to achieve and maintain recovery from drug and/or alcohol problems; to comply with all treatment recommendations and evaluations; to participate in regular supervised visits with children; to participate in Individual Service Plans ("ISP") and other designated meetings as requested; and to participate in placement parenting and enrichment classes.

Mother's additional FSP objectives were to stabilize her mental health, receive ongoing treatment, and comply with treatment recommendations; to inform and provide documentation to DHS about her treatment; to engage in anger management counseling and to obtain suitable housing.

On November 1, 2011, the court ordered that children remain as committed to DHS; that Father re-engage with ARC; that Father's weekly supervised visits at maternal uncle's home continue; that Father be granted a monthly supervised visit at the agency; and that visitation could be modified by agreement of the parties. The court found that Father was moderately compliant with the permanency plan. The court noted that Father was scheduled for an intake appointment at The Wedge Medical Center on November 3, 2011.

On February 3, 2012, the court, in a permanency review hearing, ordered that both children remain as committed to DHS. The court found that Father had been excluded as S.H.'s Father through a paternity test. The court ordered that Father continue his supervised visits with Child A.B. at the maternal uncle, J.H.'s home; that maternal uncle, J.H., maintain a visitation log; and that the visits could be modified by agreement of the parties. The court found that Child A.B. was receiving Early Intervention speech therapy. Father was also referred to the CEU for a forthwith drug screen, dual diagnosis assessment and monitoring.

On April 18, 2012, the court ordered that Father be referred to the CEU for monitoring; that Father be granted twice-weekly unsupervised visits with Child A.B. for up to four hours; that Mother be prohibited from participating in Father's unsupervised visits with Child A.B.; and learned that the children's maternal great-aunt P.C. and maternal great-uncle L.C., were participating in training to become foster parents for Children. It was ordered that Children could be moved to an appropriate placement prior to the next court date. The Court found that Father had completed a Focus on Fathers workshop on April 9, 2012.

On May 21, 2012, Children were placed with maternal great-aunt, P.C., and maternal great-uncle, L.C., through Children's Choice, where they currently remain. On June 20, 2012, in a permanency review hearing, the court ordered that children remain as committed to DHS; that

Father continue his drug and alcohol treatment at The Wedge Medical Center and his parenting education classes at ARC; that Father's unsupervised visits with Child A.B. continue; and that the visits could be modified by agreement of the parties. The Court noted that that Father had completed Parenting Education and Healthy Relationship counseling classes.

On September 21, 2012, in a permanency review hearing, the court ordered that they remain as committed to DHS; and that that Father re-engage at ARC. The Court learned that Mother and Father were residing together at 7156 Van Dyke Street. Father was found to be moderately compliant with the permanency plan.

On December 4, 2012, the court ordered that they remain as committed to DHS. Father did not attend the hearing, and the court ordered that he be referred to the CEU when he avails himself. The court found that Father had completed parenting classes at The Wedge Medical Center but failed to return for his drug and alcohol program since October 2012. The Master ordered that Father be granted supervised visits at the agency only.

On January 22, 2013, in a permanency review hearing, the court found that Children had been in DHS placement for 17 months and ordered that they remain as committed to DHS. The Court found that Father had not visited Child A.B. since the beginning of November 2012. Father was referred to the CEU forthwith for drug screen, dual diagnosis assessment and monitoring.

On March 8, 2013, an FSP meeting was held. The FSP permanency goal for Child was changed to adoption. The FSP noted that Child had been placed by DHS since July 26, 2011, and that neither Mother nor Father had been able to complete their FSP objectives. On March 22, 2013, at a permanency review hearing the court ordered that Father be re-referred to the CEU forthwith for drug screen and dual diagnosis assessment.

On June 18, 2013, the court found that Child had been in placement for 22 months, and ordered that the next court date be listed as contested goal change termination hearing. It was reported that Father was residing in a recovery house but was not receiving drug and alcohol treatment; that Father had not visited Child A.B. since May 17, 2013 and was non-compliant with making

himself available to DHS; Father was found moderately compliant. Father had failed to follow up with obtaining housing or employment, and failed to meet with his reunification worker. It was reported that Father's visits with Child A.B. has been modified to supervised visits due to Father's earlier admission that he had been selling drugs.

On November 1, 2014, DHS filed a petition for involuntary termination of Father's parental rights. On November 14, 2014, in a permanency review hearing, the court found that DHS made reasonable efforts for reunification and scheduled a Contested Goal Change Hearing for April 11, 2014. On April 11, 2014, the court found DHS's reasonable efforts and rescheduled the Goal Change Hearing for April 24, 2014. On that day, Father's parental rights were terminated. Father's attorney filed a timely notice of appeal with a Statement of Errors on May 22, 2014.

**Discussion:**

On appeal, Father raises the following issues:

1. Did the trial court err in failing to find that, for the six months immediately preceding the filing of the petition for termination of parental rights, Child's Father was visiting him, had already obtained employment, had consistent negative drug screens, was seeking housing for himself and the Child, continued to live in a recovery house and complying with its rules, completed the majority of his FSP, did not intend to relinquish his claim to the Child and did not refuse or fail to perform his parental duties?

2. Did the court err in failing to find that, for the six months immediately preceding the filing of the petition, Father had consistent contact and visits with his Child?

3. Did the court err in finding Father's repeated and continued incapacity, abuse, neglect and/or dependency of his Child, due to the fact that Father was visiting his child, had already obtained employment, was seeking housing for himself and Child, had consistent negative drug screens, continued to live in a recovery house, complied with its rules and completed the majority of his FSP objectives?

4. Did the court err in finding that the conditions that led to the removal or placement of the Child, continue to exist as to the Father, due to the fact that Father was visiting his child, had already obtained employment, was seeking house for himself and the Child, had

consistent negative drug screens, continued to live in a recovery house, complied with its rules, and completed the majority of his FSP?

5. Did the court err in finding that the conditions that led to the removal or placement of the Child continue to exist, and termination of parental rights would best serve the needs and welfare of the Child, when Father can remedy the conditions within a reasonable period of time, and due to the fact that Father was visiting his child, had already obtained employment, was seeking housing for himself and the Child, had consistent negative drug screens, continued to live in a recovery house, complied with its rules, and completed the majority of his FSP?

6. Did the court err in finding that DHS made reasonable efforts towards reunification by either failing and/or refusing to help Father obtain insurance benefits to pay for continuous drug treatment therapy and testing or a viable option, or to consider options other than terminate Father's parental rights, when Father completed the majority of his Family Service Plan objectives?

7. Did the court err in terminating Father's parental rights because of his lack of income, inability to obtain housing, provide medical care and maintain the Child, due to the fact that Father was advancing in obtaining full-time employment and health benefits?

8. Did the court err in finding that the Child was removed from Father's care due to the fact that the Child was in Mother's care while Father was incarcerated?

Father's raises eight separate issues on appeal. For purposes of this opinion Father's issues will be consolidated as follows: Issues One and Two will be consolidated and analyzed as it relates to the grounds established in the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1); Issue Three will be discussed and analyzed as it relates to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (2); Issues Four and Five will be discussed and analyzed as it relates to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (5) and (8); Issue Six which questions DHS' reasonable efforts towards reunification, will be treated individually as well Issue Eight; and Issue Seven will be discussed as it relates to 23 Pa.C.S.A. §2511 (b).

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a). The Adoption Act provides the following grounds for involuntary termination:

**(a) General rule** - The rights of a parent, in regards to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights; the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999).

DHS developed a set of FSP objectives for Father on September 22, 2011. The objectives and goals developed were parenting, visitation, housing, employment, and drug and alcohol treatment (N.T. 4/24/14, pg. 45). The agency worker's testimony established the existence of an ISP, which objectives coincided with Father's DHS FSP objectives (N.T. 4/24/14, pg. 14). Father completed parenting classes and is employed (N.T. 4/24/14, pg. 48). Father attended the visits established with relative consistency (N.T. 4/24/14, pg. 67) only missing fifteen visits prior to November 2012. However, he disappeared from November of 2012 to late January 2013 (N.T. 4/24/14, pg. 67) and did not provide any information about his whereabouts (N.T. 4/24/14, pgs. 67-68). During this period no visitation took place (N.T. 4/24/14, pg. 68), nor did Father call the Child (N.T. 4/24/14, pg. 68).

In January 2013 Father started working through a temporary agency (N.T. 4/24/14, pg. 71). Father's income is approximately nine hundred dollars every two weeks (N.T. 4/24/14, pg. 66). Nonetheless, Father did not use his wages to provide for Child's needs (N.T. 4/24/14, pg. 71). Father purchased a Ford Mustang instead (N.T. 4/24/14, pg. 75).

Father still lacks appropriate housing and is living at a recovery house (N.T. 4/24/14, pgs. 48, 65). In spite of his compliance with his employment and parenting objectives, Father did not fulfill the most important goal in the FSP, drug and alcohol treatment (N.T. 4/24/14, pg. 45). It was established that, because Father lives out of the county, CEU was unable to recommend any drug and alcohol program for him. It was established that DHS provided Father with the information to obtain medical insurance assistance in order for him to obtain drug screens at his residential drug program in Bucks County. At the same time, the court order him to obtain drug screens at the CEU free of charge, which he failed to avail himself (N.T. 4/24/14, pgs. 45-49, 52). The trial court found DHS made reasonable efforts to help Father on: February 22nd , April 18th , June 20th , September 21st and December 12th , 2012, and on: January 22nd , March 22nd , June 18th , April 11th and November 14th , 2013.

At one point in time prior to October 2012, Father was involved in a drug and alcohol treatment at the Wedge. In October 2012 during a FSP meeting, Father disclosed and admitted that he has been selling drugs and providing urine samples with other people's urine with the purpose of passing his drug test (N.T. 4/24/14, pg. 47). As a result, alcohol and drug treatment remains an objective since Father never successfully completed a program (N.T. 4/24/14, pg. 62). Also, as a consequence of his admission, Father's unsupervised visitation changed to supervised visitation (N.T. 4/24/14, pg. 67). Father never provided any documentation to verify completion of his drug and alcohol program (N.T. 4/24/14, pg. 46), which was requested on a weekly basis (N.T. 4/24/14, pg. 63). Prior to November 2013, no certification of completion was ever provided by Father (N.T. 4/24/14, pg. 63). Father stated that he requires health insurance to be involved in a drug and alcohol program (N.T. 4/24/14, pg. 63); however, he did not use his wages to pay for health insurance or complied with court referrals to the CEU free of charge (N.T. 4/24/14, pgs. 49-72).

DHS' petition for termination was filed on November 1, 2013. Since 2012, Father has been continuously failing to perform his parental duties toward the Child. Father has consistently refused or failed to perform parental duties, such as provide for Child's needs (N.T. 4/24/14, pg. 71), obtain appropriate housing (N.T. 4/24/14, pgs. 48, 65) and complete drug and alcohol treatment (N.T. 4/24/14, pg. 62). Father's pattern of non-compliance continued for at least six months prior to the filing of the termination petition. As a result, all the elements of the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1) have been fully satisfied.

The Adoption Act at 23 Pa.C.S.A. §2511(a) (2) also includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. _Adoption of C.A.W._, 683 A.2d 911, 914 (Pa. Super. 1996). Courts have further held that the implications of the parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of §2511 (a) 2. _In the matter of B.L.W._, 843 A.2d 380 (Pa. Super. 2004), the court's grave concerns about the Father's ability to provide the level of protection, security and stability that his child needed was sufficient to warrant termination. Id. at 388.

From the beginning of this case, when Child was placed with the natural great-aunt and subsequently when the Child was moved to maternal uncle and until the day of termination hearing on April 24, 2014, Father has failed and refused to remedy the causes that brought Child into care. Father continues to have a substance abuse problem, unstable housing and non-compliance with his treatment (N.T. 4/24/14, pgs. 44-45, 48-49, 52, 65). Father has had no success in remedying the barriers to become an effective Father. Father has been well aware of his FSP objectives (N.T. 4/24/14, pgs. 14, 45). Father has used his wages to buy a car instead of buying health insurance, and provide for the Child's needs (N.T. 4/24/14, pgs. 48, 66, 71-72). Father has failed to provide DHS with any documentation and for a period of time his

Circulated 12/05/2014 02:54 PM

whereabouts were unknown (N.T. 4/24/14, pgs. 46, 63, 67-68). Father has admitted selling drugs and providing urine samples of other people's urine to pass drug screens (N.T. 4/24/14, pg. 47). Drug and alcohol treatment remains an incomplete FSP objective (N.T. 4/24/14, pg. 62). Due to Father's non-compliance, he went from having unsupervised visitation to supervised visitation (N.T. 4/24/14, pg. 67). Father continues to lack housing and currently lives in a recovery house (N.T. 4/24/14, pgs. 48, 65). However despite Father's lack of compliance, DHS has continuously made reasonable efforts in 2011, 2012, and 2013 to provide Father with services. Child has been in placement for a period of thirty-three months. The Child needs permanency; consequently, DHS has met its burden under 23 Pa.C.S.A. §2511 (a) (2).

DHS also requested termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby child may be removed by court or voluntary agreement and is placed with an agency at least six months, conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare.

DHS, as a children and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that the child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The Child has been in care for a period of thirty–three months. Father's substance abuse, unstable housing and non-compliance with the treatment caused the placement of the child (N.T. 4/24/14, pg. 44). Father went from having unsupervised visitation to supervised visitation (N.T. 4/24/14, pg. 67). Father never provided any documentation that verifies his drug and alcohol

program completion (N.T. 4/24/14, pg. 46), which was requested on a weekly basis (N.T. 4/24/14, pg. 63). Father lacks appropriate housing and is living in a recovery house (N.T. 4/24/14, pgs. 48, 65). Father continues to be unable to summon the ability to handle his responsibilities of parenting. Well more than eighteen months have passed, and Child is no closer to be reunified with Father as to when Child came into care. Child's life cannot be put on hold in hope that the Father will remedy the conditions that led to placement within a reasonable amount of time. The needs and welfare of the Child dictate that DHS met its burden as to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (5).

As to §2511 (a) (8) of 23 Pa.C.S.A., DHS met its burden by clear and convincing evidence that the Child has been out of Father's care for twelve months or more and the conditions leading to the placement still exist, and termination would best serve the needs and welfare of the Child. Child has been continuously under DHS custody for a period of thirty-three months (N.T. 4/24/14, pg. 43). The conditions that led to the Child's placement still exist (N.T. 4/24/14, pgs. 68-69). Despite the good faith efforts of DHS to make services available (N.T. 4/24/14, pgs. 48-49, 52), it is in the best interest of the Child to terminate Father's parental rights (N.T. 4/24/14, pgs. 68-69)

Father's sixth issue on appeal is whether court erred in finding DHS made reasonable efforts towards reunification. Pennsylvania Juvenile Act recognizes family preservation as one of its primary purposes. *In interest of R.P. a Minor*, 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make reasonable efforts to reunify the biological parents with their children. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 670 (Pa. Super. 2001).

Due to the fact that Father lives out of the county, it was established that CEU was unable to recommend any program. As a consequence, DHS helped Father find appropriate programs (N.T. 4/24/14, pgs. 48-49, 52). In 2012, the trial court found reasonable efforts on: February 22nd, April 18th, June 20th, September 21st and December 12th. In 2013, the court found

reasonable efforts on January 22nd, March 22nd, June 18th, April 11th and November 14th. The termination petition was filed on November 1, 2013. The court has consistently found that DHS made reasonable efforts throughout the life of the case. DHS offered services and alternatives to Father. Nonetheless, Father decided not to follow DHS guidance and avail himself of the services being offered.

The trial court will now consider Father's seventh issue on appeal. In order to terminate parental rights, the party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. Also the best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. *In re Bowman*, 436 Pa. Super. 647, A.2d 217 (1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Pursuant to 23 Pa.C.S.A. §2511 (b), the trial court must also consider what, if any bond exists between Father and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.*, 387, 397 (Pa.Super.2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 a.2d 753,762-763 (Pa. Super. 2008). Under 23 Pa.C.S.A. §2511 (b), the rights of a parent also shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical if found to be beyond the control of the parent.

The Child will not suffer any irreparable harm by terminating Father's parental rights (N.T. 4/24/14, pg. 50). Child looks to aunt and uncle to satisfy his daily needs (N.T. 4/24/14, pg. 50). In addition, foster parents do in fact ensure that Child's services are in order on a daily basis (N.T. 4/24/14, pg. 69). Conversely, Father does not use his wages to provide for the Child's daily needs (N.T. 4/24/14, pg. 69) and has not been involved in any of the special services required by the Child (N.T. 4/24/14, pg. 51). Father and Child do not have a parent child/bond (N.T. 4/24/14, pg. 77). Father does not provide for the Child's comfort, security and stability. The foster parents do (N.T. 4/24/14, pg. 69). It is in the best interest of Child to be adopted (N.T. 4/24/14, pg. 69). Moreover, the termination of Father's parental rights will not cause irreparable

harm to the Child since there is no parent/child bond. The court determined that the testimonies of the DHS witnesses were credible. Additionally, the record clearly establishes that Father's parental rights are being terminated due to his lack of non-compliance with his FSP objectives, no parent/child bond, causing no irreparable harm if it is severed and not due to environmental factors.

Father's final issue on appeal questions whether the court erred in finding that the Child was removed from Father's care due to the fact that the Child was in Mother's care while Father was incarcerated. Nothing in the record suggests or establishes that Father was incarcerated at the time Child was found to be dependent. In fact, and it is on the record that Father was present at the Shelter Care hearing, and at the Adjudication hearing of the Child.

## Conclusion:

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of the parental rights pursuant to 23 Pa.C.S.A. § 2511 (a) and (b). The court also finds that it will not cause irreparable harm to the Child to sever any bond, and it is in the best interest of the Child since it would best serve the emotional needs and welfare of the Child.

Accordingly, the order entered on April 24, 2014, terminating the parental rights of Father A.J.B. Sr. should be affirmed.

By the court